All right, our final case for today, and we're now in the afternoon, is United States v. Robert Triggs. Good afternoon. May it please the Court. There are two issues in this case, but I'm going to focus here today on the Rahif issue. Under Rahif, there's no question that we have an error, and it's really, it's a multifaceted error. It's a Rule 11 error, it's a due process error, there's an error in the indictment. Really, Robert Triggs pled guilty to a crime, although essentially no one involved in this case at the time knew the true nature of the offense, as clarified recently by the Supreme Court. So the dispute here is about Rule 52b's prejudice prong, whether the error affected substantial rights. And because we have a plea case, the question is whether there's a reasonable probability that if Robert Triggs, and of course his attorney, had understood that an essential element of 922G9 was that Mr. Triggs understand that he'd been convicted of a misdemeanor crime of domestic violence when he possessed firearms, if he would not have pled guilty in that circumstance, he would have gone to trial. And here, where the record reveals a solid basis for a lack of knowledge defense, Mr. Triggs is able to meet his burden. Just out of curiosity, Ms. Feit, I know this is all quite recent, obviously, Raheif is a recent case, but are you aware of any cases that have applied, well, in which people have raised this 922G argument about the misdemeanors of domestic violence in this context? Your Honor, I looked just last night, there's a new 11th Circuit case, but it doesn't make this sort of Raheif argument that's being made here. It looks like in that case, the defendant solely made the argument that the indictment, because it didn't state an element, was faulty, and there was no jurisdiction, and the whole case should be thrown out, but didn't make any sort of argument. Didn't focus in on this. Correct. So there was no argument that he didn't know or that he would meet the plain error standard. And I think in that case, there actually was some evidence, some specific affirmative evidence that he knew about it. He said something at the time of arrest or something like that. As far as I know, that's the only case like that.  Thank you. I mean, the case law is really developing here. There are a couple of cases that I don't know if I would say they're comparable, but there's Davies out of the 8th Circuit, and there's Bowens out of the 6th Circuit, both of which have addressed a question that I think is relevant here, which is when the status includes some sort of legal issue that's kind of inherent in the status, in Davies, it was the definition of conviction. I know the court talked about that case in Williams, its first Rahif case, as far as I know, where the person had pled guilty to a crime but not yet been sentenced, and he met the plain error standard because it's not clear he would have known he was convicted. In Bowens, a very different issue, but it was an unlawful drug user in possession of a firearm. He did not get relief in that case, although, again, it's not clear that he made a real argument in that case because the case was argued before or maybe right just after Rahif came out. But the 6th Circuit is clear that under Rahif, where the status involves legal issues, there is some element to which the client has to understand the legal status that he has. And of course, that is addressed in Rahif itself, when it talks about collateral legal issues that are part of the status. But the bottom line here is that this is a fairly messy case, unlike a felon in possession case where someone's been to prison, where it's really quite clean. There's not, usually except in the situation of Davies, there's not usually complexity to the status here. 922 G9 is inherently or extrinsically sort of complicated because of the definition of misdemeanor crime of domestic violence. And then, in particular, Mr. Trigg's predicate conviction comes out of a case where he wasn't represented. He very quickly pled guilty to simple battery with no jail time. He was given a standard form that more or less told him the case would not affect his firearm rights. And then Trigg's later swore on a federal firearms form that, no, he'd never been convicted of a misdemeanor crime of domestic violence. So there's all sorts of stuff that makes this case a much trickier sort of case for the government to prove. Yeah. I guess I want to follow up on that a little bit, is I was applying Rahafe to the domestic violence misdemeanor provision. What caught my attention were the requirements in 33, I'm sorry, 18 U.S.C. 921-33 capital B about you have to have knowingly and intelligently waived your right to counsel in the underlying case and your right to a trial by jury. I'm summarizing more complex provisions there. I'm trying to – we said in Williams a few days ago that if somebody spent eight or nine years in prison, we'd assume that he knows he's been convicted of a felony, but Rahafe has applied to these standards is going to make this very, very difficult to prosecute. That's correct, Your Honor, and given the complexity of this and also given that here Mr. Trigg's had a pretty low risk for going to trial, certainly among federal defendants a very low risk. So it's really hard to see any defense attorney post-Rahafe not suggesting to his client that he go to trial on this, and there's just every reason given this record to think that Mr. Trigg's would have taken that advice to get the possibility of avoiding his very first felony conviction. I gather, Ms. Fite, that access to firearms is very important to Mr. Trigg's. That's correct. He's a lifelong hunter. And so what do we make of the evidence that he tried to buy a gun a few years ago and was turned down and what, didn't ask any questions? Correct. I'm not sure, I think this is all in the record, but in the affidavit that he did, essentially he was buying a gift for his son, he was turned down, there was no explanation as to why he was turned down. The records the government has presented has not been consistent with that. At that point, I'll get a new present for my son, it wasn't really a big deal.  I think the government, I would expect them to try to use it to prove their case, I would expect Mr. Trigg's to also use it. Really the only direct evidence of his knowledge that could possibly exist is his own testimony, which he will have the opportunity to get at a trial. But we can make inferences on both sides from all this evidence, but it again just shows this is an imminently triable case, and again, one that if he had known what Rahif tells us about the crime, there's just every reason to think he would have gone to trial. Hence prejudice. Hence prejudice. There's also, of course, this discretionary element of the plain error standard. The government hasn't made an argument on that, but given that so long as we have prejudice we have a fairly clear due process problem of him pleading guilty to something without understanding an essential element, and he would not have pled guilty otherwise. Perhaps we can all just agree that that's exactly the sort of case where the court generally does exercise its discretion to make sure that he has the opportunity to exercise his right to trial on the offense as we now all know it is. The record in the underlying case is vague on whether he was actually informed of and understood the elements of the crime that he was found guilty of, because he was unrepresented by counsel, the state judge didn't tick through the elements, as I read the plea transcript, and the plea questionnaire didn't check the battery box. I wholeheartedly agree, Your Honor. It doesn't even cite the statute. There's blank boxes in the charging section. Well, and it's particularly confusing because it does X the bail jumping box, but it doesn't X the battery box, and then there's, you know, it's this form that just lists, I think it's like 26 different crimes, and battery is right next to substantial battery, and nothing is written anywhere. Again, the judge doesn't go over it. It's just another aspect of this case that makes it incredibly messy. Perhaps it would have been a defense before Rahif, but maybe not a defense that was good enough to risk going to trial, even with a low risk. At this point, we have a much, much better defense that everybody would like to go to trial on. Okay. Thank you. I'll let you save your last 15 seconds. Ms. Schlipper. May it please the Court. My name is Diane Schlipper, and I represent the United States in this matter. Obviously, this is a two-issue case, but I'll start with Rahif. This Court's January 10th opinion in Williams made clear that on plain error of view, Triggs must show prejudice, and— I mean, Mr. Williams, you would have had to think he was zoned out for, you know, 10 years and didn't even know he was in prison. Mr. Rahif—sorry, Mr. Rahif—Mr. Triggs, quite a different situation. Certainly. There's no doubt that when you're taking the Rahif errors outside of the felon in possession where they spent more than 12 months, it becomes much murkier. But in the circuits who have come down on this Court thus far have all said that a review of the record is almost required. And on this record, and perhaps this is the big dispute, the government does not believe that Triggs has met his burden. He told the officers he didn't know—I mean, he was actually very cooperative. He said he didn't know that he was barred from possessing firearms. He voluntarily surrenders them. His behavior is that of a person who doesn't have any idea that he is, as the Rahif case puts it, you know, in the class of people who are covered by the statute. Well, and I think that Ray Haif's holding suggests that Triggs needed to know that he had been convicted of a misdemeanor crime of domestic violence, not perhaps that he was a restricted person, though certainly the ATF form in 2013, when his own—the record is clear that he got a letter saying that he was denied the purchase of a firearm. And again, under Ray Haif, that's not necessary, but it certainly was evidence that he knew he was restricted then by 2015. Well, but he might not have known—I mean, he could have been denied because his credit was bad. What assures us that he would have linked that denial to the earlier misdemeanor proceeding in which he wasn't even represented by counsel? And I'm not suggesting they are, but I'm— I don't see how you could link them. I was just addressing that he knew he was prohibited at the point that he received the 20— Well, he knew that gun purchase had been turned down. I guess I'll go that far. Unless the form said, and henceforth from now on for the rest of your life, you will also be forbidden to buy a gun. I mean, I don't—I don't see where you can go there. Well, and I'll move to the record in this case, which the government believes is fairly clear that he did know that he was convicted of a misdemeanor crime of domestic violence. And in response to some of— What would have clued him in? Because the statute doesn't say a misdemeanor, a violent misdemeanor. It could have said that, but it doesn't say that. It singles out this subset, those dealing with domestic violence. I think there are several places in the record where he was clued in. And unlike in Williams, where nothing in the plea colloquy at the district court level revealed whether Mr. Williams had known of his status, here at the district court plea hearing, Triggs admitted to the judge that he was charged in this case not only because he had firearms, but he had them as a prohibited person. You're talking about when he's admitting to the federal charge here, right? Correct. Okay, by that time, he's been counseled. He knows the relevant law pre-Rahif, right? Correct. Pre-Rahif, yes. So his state of knowledge at the time of the plea agreement is not really very probative here. Well, this court in Williams looked to and specifically stated there was nothing in the plea colloquy in the district court, and so it seemed potentially fair game to look there. Okay. Let me never prohibit people from looking at parts of the record, but what about the provisions in 33B, where you also need to have known that you validly waived counsel and jury? Well, Your Honor, in this case, the state court, and certainly it could have been lengthier and could have been more detailed, but the state court, as far as providing knowledge to Triggs on whether he did plead to the misdemeanor battery is quite clear, but he testified in the state court hearing that he actually read the plea questionnaire and waiver of rights and that he understood it and he didn't have any questions. The elements for battery were attached to that. That box was not checked. But the elements were attached to it and he said he did not have any questions. In fact, no crime was even listed on the plea questionnaire. Those boxes were left blank. And then, in addition to that, Mr. Triggs told the state court judge that he read the criminal complaint and the facts recited were substantially correct. In fact, the criminal complaint lists it as misdemeanor battery, domestic abuse, and it lists also the elements of force that are necessary for the misdemeanor battery. And further, he also, I mean, he pled to misdemeanor battery. He knew it was his live-in girlfriend at the time. And he said he freely entered the plea and was not confused and had no questions. And previously, he had actually, and I believe this would be relevant to whether he understood and freely waived, but that he actually asked a question of the prosecutor off the record, which was then placed on the record in front of the judge. And so the criminal complaint lists the elements of battery, which, again, outlined the force element. And Triggs also knew from previous encounters at the court what a charge of domestic abuse or domestic violence means. He had at least one prior case involving his ex-wife that did not result in a criminal conviction. But again, it required him to pay the domestic abuse surcharge. And we would argue, as I already did, that he actually lied on his ATF form when asked if he had been convicted of a misdemeanor crime of domestic violence, and then later said that he never looked at the denial. But it was still a denial regardless of, as you said, Judge Wood, whether it was because of a credit issue or something like that. So given this, and Ms. Fite makes reference to the fact that this case becomes more triable after Rayhave comes out, and that may very well be true, but this case, similar to Burghardt's, in the First Circuit, the probability of opting for a trial would have increased commensurate with the perception that the government would have had any difficulty in proving the added element. And here, the government's position is that... And you would agree. I mean, as the Supreme Court put it, the government has to prove that he knows of his status as a person barred from possessing. In other words, his status as somebody who's committed a misdemeanor crime of domestic violence. Correct. But... But it seems there's evidence that might show that he didn't know that he had that status. The government takes a different position based on the state's work. Oh, I'm sure you do, but I mean, that sounds like a trial question. Well, increasing his chances at trial does not equate to satisfying his burden. He's never said that he didn't know that he was convicted of a misdemeanor crime of domestic violence, only that he might go to trial. He said he didn't... I thought he said in the plea colloquy that he didn't know that he wasn't allowed to have firearms. That may not be conclusive, but he apologized to the court, didn't he? I didn't know him, but... But that's different than not knowing that he was convicted of a crime of domestic violence. It's different, I agree. It's not conclusive, but... Okay. And he did tell officers, as part of the record, during that, you know, when they came to arrest him, after getting that ATF form, that he knew he had been denied. There's nothing further we would ask that the district court decisions be affirmed. Thank you. All right. Thank you. Ms. Veit? We can give you a full minute, Ms. Veit. You're generous today. Thank you, Your Honor. I just want to make sure we're not arguing a sufficiency of the evidence claim here. We're just arguing this case is triable. And I apologize, it wasn't cited in our brief, but in Williams, obviously, this court is aware that Dominguez-Benitez is the Supreme Court case, talking about the plain error review in plea cases. And it uses the Strickland standard for prejudice, which we're all quite familiar with. So then we go back to the Strickland cases, which I did cite in my brief. It's really the chances at trial and the change in your attorney's advice, which is going to lead somebody to be able to prove a reasonable probability of going to trial. And that's exactly what we have here. Thank you. All right. Well, thank you. Thanks to both counsel. We will take the case under advisement, and the court will be in recess.